T. G. LOCKWOOD, *et ux.,* HUGH CARTER, *et ux., et al.,* v. W. F. WALKER, as Trustee, for the use and benefit of Erle L. Wirt, as sole surviving executor of the Last Will and Testament of T. L. Wilson, also known as Thomas L. Wilson, deceased; and W. F. WALKER, individually, and GLADYS H. WALKER, his wife.

172 So. 359.

Opinion Filed February 1, 1937.

*Sutton, Tillman & Reeves*, for Appellants;

*John S. Edwards* and *C. V. McClurg,* for Appellees.

BUFORD, J.—The appeal in this case is from final decree in favor of complainant in a partition suit.

On the 30th day of June, 1913, Hugh Carter and Fannie. Carter, his wife, entered into a contract with W. F. Walker and W. P. Read whereby Carter agreed to deed to Walker and Read a two-thirds interest in 160 acres of land then his homestead and to allow them to exercise an option which he then held on certain other property. In consideration of this agreement on behalf of Carter, Walker and Read agreed to prospect all of the land for phosphate and in event the land showed a total tonnage of not less than Five Hundred Thousand tons and an over-burden not exceeding 45 feet, Walker and Reed would exercise the option which Carter held and take title to the land so that the title would vest an undivided one-third interest in each of the parties, respectively, Carter, Walker and Read.

Pursuant to that contract Walker and Read prospected the land and, finding it satisfactory, exercised the option, paying $6400.00 for the tract known as the Hallam tract and on August 11, 1913, conveyance of that land was made to Carter, Walker and Read, jointly. Under the provisions of the contract Walker and Read purchased the Blanchard lands. Conveyance of this was made to W. P. Read on October 3, 1914, and thereafter, by separate deeds, Read, joined by his wife, conveyed an undivided one-third interest to Walker and Carter each respectively. In further pursuance of the contract Hugh Carter and his wife, Fannie Carter, conveyed to Walker and Read, jointly, an undivided two-thirds interest in and to the Hugh Carter homestead tract. Thus it was that in pursuance of the terms of the contract Walker and Read became vested each with the title to an undivided one-third interest in and to each of

the involved tracts of land and were from thence on tenants in common of the lands described.

Thereafter Read conveyed his one-third interest in the lands to Walker, and Walker, in turn, executed a declaration of trust declaring that he, the said W. F. Walker, was possessed of an undivided two-thirds interest in and to the lands involved for the use and benefit of T. G. Lockwood, the estate of M. A. Waldo, late of said County, deceased, T. L. Wilson and of himself, the said Walker, and declaring that T. G. Lockwood, the estate of M. A. Waldo and T. L. Wilson owned and are entitled to receive at any time deed of conveyance to an undivided one-third interest in and to all of the lands and that W. F. Walker was entitled to receive and hold an undivided one-third interest in and to said lands. From the date of the conveyance from Read to Walker, Carter and Walker became tenants in common to the lands described and from the date of the declaration of trust Walker continued to hold title to an undivided one-third interest individually and to hold title to the other one-third for the use and benefit of the *cestui que trustant* named.

The contract of June 30, 1913, provided not only that the result above described should be accomplished, but it provided further that Walker and Read should further prospect and sell the land as phosphate-bearing property and that in the event of a sale Carter was to get one-third of the net profits accruing therefrom.

On August 16, 1930, Walker filed bill of complaint seeking to partition the land. In that bill of complaint the complainant was named as "W. F. Walker as Trustee for the use and benefit of Erle L. Wirt, as sole surviving executor of the Last Will and Testament of T. L. Wilson, also known as Thomas L. Wilson, deceased." On October 22

the bill of complaint was amended by adding thereto "W. F. Walker, individually"; as a party complainant, and striking from the bill as parties defendant W. F. Walker and Gladys H. Walker, his wife. Thereafter, the suit proceeded in the name of Walker as Trustee and Walker, individually, against the several defendants including Hugh Carter and Fannie Carter, his wife.

The answer filed by Hugh Carter and wife admitted the conveyance of the lands as described but they set up the terms of the initial agreement in bar of petition.

The tenth ground of the Answer is as follows:

"These respondents further answering say that in pursuance of said agreement, and at or about the time of the making thereof, these respondents, relying upon the good faith of the said complainant and the said W. P. Read, and upon the undertakings of the said complainant and the said W. P. Read to properly prospect said lands for phosphate and make sale of the same, actually conveyed to complainant and the said W. P. Read, by good and sufficient deed, an undivided two-thirds interest in the lands hereinbefore referred to as 'Homestead' lands, and the title thereto has never been reconveyed to these respondents, but these respondents say that the consideration for the conveyance by them of the said undivided two-thirds interest in said 'homestead' lands has wholly failed, inasmuch as the said complainant and those claiming under him have wholly and completely failed to carry out the terms of their said agreement to prospect and make sale of the whole of said lands, and these respondents hereby charge that all persons claiming by, through or under the said complainant and the said W. P. Read have had full knowledge of the terms and conditions under which the said undivided two-thirds interest in said 'homestead' lands was conveyed by these respond-

ents aforesaid, and of the failure of said complainant and the said W. P. Read, and those claiming under them to comply with said undertaking, and therefore neither the said complainant nor the said W. P. Read, nor any other person claiming by, through or under them, or either of them, is a bona fide purchaser of any interest in said homestead lands whatsoever, and all of them are charged in law and in equity with knowledge of the failure of consideration for the conveyance aforesaid; wherefore these respondents say that the said complainants are not entitled in law or in equity to have, hold or assert any claim to any right, title or interest in said homestead lands whatsoever."

They then prayed for affirmative relief, as follows:

"For affirmative relief these respondents relying upon the statements of fact set forth in the foregoing answer respectfully pray that the deed executed by these respondents conveying to the said complainant W. F. Walker and the said W. P. Read an undivided two-thirds interest in the homestead lands aforesaid, be cancelled because of the failure of consideration therefor, as hereinbefore set forth, and that an appropriate decree be entered by the Court requiring those purporting to hold title under said conveyance to reconvey the same to this respondent, Hugh Carter, forthwith, or in the event of their failure so to do that said decree operate as a reconveyance to this respondent, Hugh Carter, as provided by the Statute; and that said complainant and all persons claiming under him, be required to convey to this respondent, Hugh Carter, the lands hereinbefore mentioned and described as 'option' lands, upon payment by this respondent, Hugh Carter, to them of the moneys paid by them as the purchase price of said lands, with lawful interest from the date of payment of said moneys until repaid, this respondent, Hugh Carter, hereby

offering to abide by any decree entered by the court requiring the payment of said moneys by him, and adjudicating the amount thereof."

A Special Master was appointed and testimony was taken.

The Special Master made his report and also a supplemental report. Final decree was entered on July 9th, 1931, and Commissioners were appointed and reported to the court that the lands could not be equitably partitioned in kind. It was thereafter ordered, adjudged and decreed that the lands described in the bill of complaint and in the Commissioners' report be sold to the highest and best bidder for cash and that the proceeds arising from said sale should be paid into the registry of the court to be divided by order of the court among the respective parties interested, and other matters properly incident to such decrees.

The briefs were filed long prior to the adoption of Amended Rule 20 but they do practically meet the provisions of that Rule. The appellants in their brief state six (6) questions. The first question challenges the sufficiency of the bill to show that the complainant is a joint tenant, a tenant in common or a co-parcener. The bill is entirely sufficient in its allegations to show that the parties are tenants in common of the lands described in the bill of complaint and; therefore, the remedy is authorized under the provisions of Sec. 3204 R. G. S., 4996 C. G. L. The allegations are also sufficient to meet the test that the Statutes of this State do not contemplate that partition may be enforced except when required by the demands or the interests of a beneficial owner or when shown to be necessary to protect the rights of those beneficially interested. Hobbs v. Frazier, 56 Fla. 796, 47 So. 929. As the court acquired jurisdiction to adjudicate partition, it follows that the court had jurisdiction to proceed to ascertain and adjudicate

the rights and interests of the parties as authorized by the statute (Christopher v. Mungen, *et al.,* 61 Fla. 513, 55. Sou. 273), and also determine as incidental to the main relief such questions of right as may have risen out of the relations existing between the complainant and defendant at the time the incidents occurred giving rise to differences between them. Farrell v. Forest Inv. Co., 73 Fla. 191, 74 Sou. 216, 1 A. L. R. 25.

It has been held:

"While the statutory proceeding for partition may not be used as a substitute for the action of ejectment to try the title to lands, or used merely for the purpose of establishing rights or title, yet where the *bona fide* object of a suit is the partition of lands between the common owners thereof, some of whom are complainants and the others are defendants, and some of the parties to the suit are in actual or constructive possession of the lands, then all controversies between the parties as to the legal title and right of possession may and should be settled by the court, as authorized by the statute, even though some of the joint owners claim adversely under a legal title, or dispute the title or right of the others to possession. And the statute authorizing this to be done in partition proceedings is not violative of the constitutional right to a jury trial. Terra Ceia Estates v. Taylor, 68 Fla. 261, 67 Sou. 169; Christopher v. Mungen, 61 Fla. 513, 55 Sou. 273; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 722; 111 Am. St. Rep. 77; Dallam v. Sanchez, 56 Fla. 779, 47 So. 871; Griffith v. Griffith, 59 Fla. 512, 52 So. 609, 138 Am. St. Rep. 138, 21 Ann. Cas. 246; Koon v. Koon, 55 Fla. 834, 46 So. 633; Williams v. Clyatt, 53 Fla. 987, 43 So. 441; Ellis v. Everett, 79 Fla. 493, 84 So. 617; Gracy v. Fielding, 71 Fla. 1, 70 So. 625."

And so it is that we come to the other controlling feature of the case and that is whether or not the contract of June 30, 1913 (we refer to this as contract of *June* 30, 1913, because that date appears at the beginning of the contract, while the last paragraph of the contract recites "Witness our hands and seals this 30th day of *July,* 1913"; acknowledgment was executed the 1st day of *July,* 1913, and, therefore, the date 30th day of July must have been error) was sufficient to bar the right of partition.

There is substantial evidence in the record to show, and we assume that the Chancellor so determined, that Walker and Read performed their part of the contract and thereafter Walker, Read and Carter executed to T. G. Lockwood an option to purchase the three tracts of land for the sum of $60,000.00 and thereafter that Carter refused to convey his one-third interest in the lands to Lockwood; that Lockwood was ready, willing and able financially to purchase the land in accordance with his agreement; that the price offered was a fair value of the land; that Lockwood filed a suit against Carter for specific performance of the option but about this time the World War occurred and destroyed the market for American Phosphate and thereupon Lockwood's associate took advantage of Carter's refusal to convey; Lockwood dismissed his suit for specific performance and withdrew his offer to buy. So it is that the conclusion is tenable that Carter alone was responsible for the failure to sell the lands at a considerable profit pursuant to the terms of the agreement. And so it is then that when Carter frustrated the performance of the agreement he was barred from thereafter claiming that his co-adventurers were bound to perform all the terms thereof.

Aside from this, we must consider the fact that this agreement was made in 1913; the suit was filed in 1930, seven-

teen years after the title became vested in Walker and
Carter as tenants in common.

Under the facts as disclosed by the record, partition was
a proper remedy to be invoked to bring to an end the status
of tenants in common and as an incident to that remedy. it
was entirely proper and in accord with law and equity for
all the rights and differences between the parties having any
interest in the lands arising out of or in connection with
such interests, to be determined and adjudicated by the
Chancellor.

The orders and decrees appealed from indicate that the
Chancellor recognized the above stated rule and has con-
formed thereto, reserving jurisdiction to divide the pro-
ceeds of the sale of the property as the rights of the parties
may require. It has been, and is the consistent rule in this
jurisdiction that the Chancellor's findings and his conclu-
sions of fact will not be reversed on appeal unless it be
made clearly to appear that he has erred in such conclusions.
The appellants have not met this burden.

So, the orders and decrees appealed from should be, and
are, affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and
DAVIS, J. J., concur.